UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

*v.*

HAKAN YALINCAK

Crim. No. 3:05cr111 (JBA) and
05cr153 (JBA)

October 26, 2015

**RULING GRANTING MOTION FOR STAY**

On June 6, 2006, Defendant Hakan Yalincak pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 and one count of wire fraud in violation of 18 U.S.C. § 1343. He was sentenced to 42 months' imprisonment and ordered to pay restitution in the amount of $4,182,000.[1] (Judgment [Doc. # 145][2].) On August 2, 2011, the Court granted [Doc. # 205] the Government's application for a writ of garnishment of an account holding $134,809.42.[3] Those funds (plus interest)[4] are now being held in the Court's Registry Account, awaiting distribution to Mr. Yalincak's victims.[5] As discussed in the Court's Ruling on Defendant's Motion for Reconsideration [Doc. # 254], after

---

[1] Mr. Yalincak is jointly and severally liable for $2,250,000 of this amount with Ayfer Yalincak.

[2] All docket numbers refer to No. 3:05cr111 unless otherwise indicated.

[3] These funds were the result of Mr. Yalincak's settlement of a lawsuit he filed against his attorney Bernard Grossberg in bankruptcy court.

[4] The Account's current total is $134,908.42.

[5] The Court originally ordered these funds to be distributed to F.M. and R.D. However, as explained in the Court's Order on Defendant's Motion for Reconsideration, R.D. has now been fully compensated. Therefore, the entirety of the garnished account would be credited to F.M.

distribution of those funds, Mr. Yalincak will still owe his victims $1,858,038.38 in outstanding restitution.

Since the restitution was ordered, Mr. Yalincak has sought, on several occasions, credit towards his restitution for funds recovered through bankruptcy or related proceedings. Several such motions had been pending on the docket for some time when the Court ruled on them [Doc. # 237] on May 11, 2015. In the course of ruling on those motions, the Court became aware of an error it had previously made in granting motions by Mr. Yalincak to modify his restitution. Because the Court's grant of the prior motions [Doc. # 160] bore on the pending motions, and the Court's prior grant was clearly erroneous, the Court vacated its prior ruling.

Mr. Yalincak immediately sought reconsideration of that order and a stay of the Court's ruling. A status conference was held on July 7, 2015, after which the parties filed additional briefing. On September 28, 2015, this Court granted Mr. Yalincak's motion for reconsideration in part, but declined to reconsider its vacatur of its prior ruling on the motion for credit. Mr. Yalincak has appealed the Court's decision[6] and now seeks [Doc. # 256] an order staying distribution of funds held by the Clerk's office until the Second Circuit has ruled on his appeal.[7] For the following reasons, his motion is granted.

---

[6] The Court notes that Mr. Yalincak has recently withdrawn two appeals [Doc. # 260] related to this case, but his appeal of the Court's Order on Defendant's Motion for Reconsideration (15-3170) remains pending.

[7] Although Mr. Yalincak does not appeal the Court's garnishment order, the garnished funds are relevant because if the Second Circuit accepted all of Mr. Yalincak's arguments, he stands to receive credit for $1,757,176.49 as to F.M., which would fully satisfy his obligations to F.M. (See Def.'s Mem. Supp. Restitution Credit [Doc. # 249] at

## I.      Discussion

In requesting a stay of distribution, Mr. Yalincak cites the legal standard applied in *Nken v. Holder*, 556 U.S. 418 (2009), which the Supreme Court described as the "the traditional test for stays." *Id.* at 433. The Government objects, arguing that *Nken* is inapplicable here because it concerned a stay of removal of an undocumented immigrant and not a stay of restitution. According to the Government, Federal Rule of Criminal Procedure 38(e) applies instead.

The Court agrees with the Government that Rule 38(e) applies here, but the Court also agrees with Mr. Yalincak that *Nken* provides useful and relevant guidance. Rule 38(e) grants district courts discretion to stay a sentence of restitution on any terms considered appropriate, but "[t]he fact that the issuance of a stay is left to the court's discretion does not mean that no legal standard governs that discretion. . . . A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id.* at 434 (internal quotation marks omitted).

The Supreme Court identified four factors traditionally relevant to a court's decision regarding whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.; see also United States v. Oates*, No. 5:12-CR-283 (KOB) (TMP), 2013 WL 2450719, at *4 (N.D. Ala. May 23, 2013) (applying the factors identified in *Nken* in determining whether

---

22.) As such, F.M. would not be entitled to the funds in the garnished account, and these funds could be used to compensate other victims to whom Mr. Yalincak owes restitution.

to grant a stay under Rule 38(e)); *United States v. Keifer*, No. 2:08-CR-162, 2012 WL 3878194, at *1 (S.D. Ohio Sept. 6, 2012) (citing to *Nken* in applying Rule 38(e)). "The first two factors of the traditional standard are the most critical." *Id.*

### A.  Likelihood of Success on the Merits

The only issue on which Mr. Yalincak contends he is likely to succeed on appeal is with regard to the vacatur. Specifically, he contends that the Court erred in relying on *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) for the proposition that it has an inherent power to "correct mistakes made in its handling of a case" because: (1) *LoRusso* may not be good law after *Evans v. Michigan*, 133 S. Ct. 1069 (2013) (*see* Mot. to Stay at 3); and (2) "the December 26 Order [vacated by the Court] was an appealable final order, not a mid-trial interlocutory order as occurred in *LoRusso*" (*id.*). Mr. Yalincak is wrong on both counts.

First, the holding of *Evans*, that retrial following a court-decreed acquittal, even if that acquittal was mistaken, violates the Double Jeopardy Clause, is inapposite to the question presented here. The part of *LoRusso* cited by this Court in its Ruling was a quotation from *United States v. Jerry*, 487 F. 2d 600, 604 (3d Cir. 1973), reciting the general and well-established principle that courts have "the power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience." That principle has been repeatedly reaffirmed and was in no way abrogated by *Evans*. *See, e.g., Alea N. Am. Ins. Co. v. Salem Masonry Co.*, 301 F. App'x 119, 121 (3d Cir. 2008) ("A district court is entitled to reconsider its interlocutory orders when it is consonant with justice to do so." (internal quotation marks omitted)); *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945 (6th Cir. 2004) ("'District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may

4

modify, or even rescind, such interlocutory orders.'" (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991))); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001) ("A district court's power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure."); *United States v. Breit*, 754 F.2d 526, 530 (4th Cir. 1985) ("A more recent interpretation of this general common-law rule in the criminal context provides that despite the nonexistence of a specific rule in the Federal Rules of Criminal Procedure, a district court has the inherent power, and thus jurisdiction, to reconsider interlocutory orders prior to entry of judgment on such orders."); *Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F. Supp. 2d 587, 593 (S.D.N.Y. 2012) ("[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.").

Second, the order vacated by the Court was not, as Mr. Yalincak contends, a final order, but rather an interlocutory order. Generally, "[a] final order is one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment. In postjudgement proceedings, [however,] the meaning of a 'final decision' is less clear because the proceedings necessarily follow a final judgment." *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010) (internal quotation marks and citations omitted). A "simple" and "sensible" approach to this problem, taken by the Seventh and Eleventh Circuits, is to "treat the postjudgment proceeding as a free-standing litigation, in effect treating the final judgment as the first rather than the last order in the case." *Ass'n of Community Orgs. for Reform Now (ACORN) v. Illinois State Bd. of Elections*, 75 F.3d 304, 306 (7th Cir. 1996). "Thus, an order is deemed final if it disposes of

all the issues raised in the motion that initially sparked the postjudgment proceedings. . . . Only if a postjudgment order is apparently the last order to be entered in the action is it final and appealable." *Mayer v. Wall Street Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012) (internal quotation marks omitted).

The motions at issue here were two motions for credit toward Mr. Yalincak's restitution, and it was clear when those motions were filed that they would not be the last such motions. Indeed, in one of the motions at issue, Mr. Yalincak specifically noted that he anticipated filing a number of additional motions for credit in the future. (*See* Mot. for Credit [Doc. # 159] at 1 n.1 ("The Bankruptcy Trustee has commenced approximately fourteen (14) adversary proceedings and the defendant anticipates that this procedure will constitute the principal avenue for restitution to the investors.").) This litigation has gone on for eight years since Mr. Yalincak's motions were filed, and Mr. Yalincak still owes nearly two million dollars in restitution. The issues underlying Mr. Yalincak's several motions for credit were not finally resolved until this Court's Ruling on Mr. Yalincak's Motion for Reconsideration on September 28, 2015. The Court thus rejects Mr. Yalincak's characterization of the Court's order on his motions for credit as final.

**B.  Irreparable Harm**

Mr. Yalincak next argues that if a stay is not granted, he will be irreparably harmed because some of his victims may be awarded funds to which they are not entitled. Specifically, Mr. Yalincak asserts that if the Second Circuit reverses this Court's previous Ruling, F.M. will be deemed fully paid before application of the garnished funds, but absent a stay, by the time the Second Circuit rules, F.M. will have already received an additional $134,902.65 to which he is not entitled. Such funds, Mr. Yalincak claims, will

6

thereby be made unavailable to other victims. The Court finds this argument persuasive. As a practical matter, recouping the garnished funds from F.M. after they have been distributed to him would be difficult, if not impossible.

### C.  Other Parties and the Public Interest

Finally, Mr. Yalincak asserts that his "request for a stay will advance the interests of justice and serve the public interest by ensuring that restitution payments are actually made to victims who are still owed money." (Mot. for Stay at 5.) While the Court is skeptical that a stay would advance the interests of justice and serve the public interest, the Court agrees that the interests of victims other than F.M. would be protected by the granting of a stay.

## II.     Conclusion

Although the Court is not persuaded that Mr. Yalincak is likely to succeed on appeal, in light of the irreparable harm that would be imposed on Mr. Yalincak and the resulting harm to victims other than F.M. if the Court denied a stay and the Second Circuit overturned the Court's prior Ruling, Mr. Yalincak's Motion [Doc. # 256] for Stay is GRANTED.[8]

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 26th day of October, 2015.

---

[8] The Court is not persuaded by the Government's contention that Mr. Yalincak should be required to post a bond. The garnished funds are being held by the Court. They will be available whether Mr. Yalincak wins or loses his appeal. In such circumstances, a bond serves no useful purpose.