UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Civil No. 3:05cr153 (JBA) |
| *v.* | |
| HAKAN YALINCAK and AYFER YALINCAK | April 24, 2020 |

**RULING ON MOTIONS FOR CREDIT**

Defendant Hakan Yalincak seeks an order "amending the Amended Order of Restitution entered by the Court on June 16, 2017 to reflect the disbursement of funds held on deposit by the Clerk of the Court" and "declaring the restitution order entered by this Court on March 21, 2007 . . . against [co-defendant] Ayfer Yalincak in the amount of $2,250,000 to be fully satisfied." (Hakan's Mem. Supp. Mot. for Credit [Doc. # 210-1] at 1.) Defendant Ayfer Yalincak moved to adopt Hakan's[1] Motion for Credit, (Mot. to Adopt [Doc. # 211]), and later filed her own Motion for Credit, seeking the same relief as requested by Hakan "in order to simplify matters," (Ayfer's Mot. for Credit [Doc. # 218] at 1). The Government opposes all three motions. For the reasons that follow, Defendants' motions are denied.

## I.      Background

The Court assumes the parties' familiarity with the history of this case but will briefly review the procedural history relevant to the Motions for Credit. Defendant Hakan Yalincak was convicted by guilty plea of one count of bank fraud in violation of 18 U.S.C. § 1344 and one count of wire fraud in violation of 18 U.S.C. § 1343. (Hakan's Judgment [Doc. # 142].) He was sentenced to 60 months of imprisonment, 36 months of supervised release, a $200 special assessment, and restitution in the amount of $4,182,000.00. (*Id.* at 1-2.) The

---

[1] For the sake of clarity, the Court will refer to Defendants Hakan and Ayfer Yalincak by first name in this ruling.

Judgment entered against Hakan specified that he "shall pay restitution in the amount of $4,182,000.00, of which defendant is jointly and severally liable with Ayfer Yalincak for $2,250,000.00 as follows: $1,750,000.00 to F.M. and $500,000 to W. A-M." (*Id.* at 1.) Defendant Ayfer Yalincak was convicted by guilty plea of one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. (Ayfer's Judgment [Doc. # 130].) Ayfer was sentenced to 24 months of imprisonment, 36 months of supervised release, a $100 special assessment, and restitution in the amount of $2,250,000.00. (*Id.* at 1-2.) The Judgment entered against Ayfer specified that she "is jointly and severally liable with Hakan Yalincak for restitution in the amount of $2,250,000.00 payable as follows: $1,750,000.00 to F.M. . . . and $500,000.00 to W. A-M." (*Id.* at 1.)

In 2007, 2011, and 2013, Hakan moved for credit against the imposed restitution of certain amounts recovered in bankruptcy proceedings of Daedalus Capital Relative Value Fund I, LLC and HMMH Holdings, LLC, corporate entities which were involved in the fraud which underlies Defendants' convictions. *See United States v. Yalincak*, 853 F.3d 629 (2d Cir. 2017). Hakan appealed certain of the Court's rulings on those motions, and the Second Circuit Court of Appeals ultimately remanded the case to this Court to "reassess" the appropriate value of the credits to be awarded in response to the distribution of assets to victims through those bankruptcy proceedings. *Id.* at 641.

On remand, this Court entered the Amended Order of Restitution, ([Doc. # 208]), which sets forth the following "balances of restitution" as of the issuance of that Order in June 2017 to reflect restitution payments made and credits applied from distributions made in the bankruptcy proceedings:

| Victim | Amount of Loss | Amount of Credit/Cash Distributed | Balance |
|---|---|---|---|
| W.A-M./Jamson Holdings | $750,000.00 | $524,181.02 | $225,818.98 |
| F.M. | $1,750,000.00 | $1,750,000.00 | $0.00 |

| R.D. | $1,000,000.00 | $1,000,000.00 | $0.00 |
| J.C./L.C. | $682,000.00 | $67,579.31 | $614,420.69 |
| TOTALS: | $4,182,000.00 | $3,500,127.99 | $840,239.67 |

The Amended Order of Restitution also directed the Clerk of Court "to distribute all funds currently held by the Clerk's Office, and all future disbursements, to victims W.A-M./Jamson Holdings ("W.A-M.") and J.C./L.C. on a *pro rata* basis of 52.4% of each disbursement to W.A-M and 47.6% of each disbursement to J.C./L.C." (*Id.* at 1.)

The Clerk of Court confirms that all funds previously held on deposit in this matter have since been fully distributed to victims on the established *pro rata* basis. Following those distributions, the current remaining balance owed to W.A-M. is $139,057.43, and the current remaining balance owed to J.C./L.C. is $549,364.21.

## II.    Discussion

Defendants argue that because of the "*joint* credit" reflected in the Amended Order of Restitution, Ayfer's restitution obligations have been fully satisfied. (Hakan's Mem. Supp. Mot. for Credit at 4-5 (emphasis in Mem.).) It is undisputed that Ayfer's restitution obligation of $1,750,000.00, owed jointly and severally with Hakan, to F.M. has been fully satisfied, as F.M. has been repaid in full. But Defendants also argue that Ayfer's restitution obligation of $500,000.00, owed jointly and severally with Hakan, to W.A-M has also been satisfied because the "joint credit" of $524,181.02 reflected in the Amended Order of Restitution exceeds the $500,000.00 owed by Ayfer to W.A-M. (*Id.*) Defendants describe Ayfer's liability to W.A-M. as "capped" at $500,000.00 and argue that the "joint credit" exceeds that cap. (*Id.*) Ayfer explains that "the basic principle that when the amount of credit/cash credited to a defendant has equaled or exceeded the amount of restitution ordered in the judgment, the judgment is satisfied," and argues that straightforward application of that principle to this case demonstrates that her obligations are satisfied. (Ayfer's Mem. Supp. Mot. for Credit [Doc. # 220] at 2.)

The Government argues that Defendants' position runs contrary to public policy, referencing the Justice For All Act, which provides that victims have a "right to full and timely restitution as provided in law," 18 U.S.C. § 3771(a)(6), and the Mandatory Victims Restitution Act, the "primary and overarching goal" of which "is to make victims of crime whole, to fully compensate victims for their losses and to restore these victims to their original state of well-being." *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011) (internal quotation omitted). The Government suggests that Defendants "seek[] to divert this Court's focus from the victim to Ayfer Yalincak," which is "not consistent with the basic principles of restitution law." (Gov't Opp. [Doc. # 212] at 6.)

The parties' dispute centers on 1) a disagreement about whether the Court ordered traditional joint and several liability or adopted the more modern "hybrid" approach to joint and several liability; and 2) a disagreement about the allocation of credit for the distributions reflected in the Amended Restitution Order, driven by competing interpretations of several key cases. Under 18 U.S.C. § 3664(h), where a court finds that more than one defendant "contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution *or* may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." The hybrid approach combines those two alternatives. As described by the Government, the hybrid approach "employ[s] a combination of the apportionment of liability approach while concurrently making all of the defendants jointly and severally liable." (Gov't Opp. at 7 (internal quotation omitted).)

A hybrid approach is often used "where multiple defendants are held liable for injuries caused by a common scheme," *United States v. Sheets*, 814 F.3d 256, 261 (5th Cir. 2016), as is the case here. When a court uses the hybrid approach, it "order[s the] co-defendants to pay restitution in different amounts for the same loss." *Id.* For example, in *United States v. Scott*, 270 F.3d 30, 52 (1st Cir. 2001), the victim's total loss was $37,970.68,

but the district court imposed joint and several restitution using the hybrid approach, ordering one co-defendant to pay restitution in the full amount of $37,970.68, a second co-defendant to pay restitution in the amount of $8,254, and a third co-defendant to pay restitution in the amount of $7,479. *Id.*

The Government argues that this type of hybrid restitution scheme is "precisely the situation in this case, where the restitution obligation was apportioned between Hakan and Ayfer Yali[n]cak, based upon their culpability . . . and Hakan and Ayfer Yalincak were concurrently made jointly and severally liable." (Govt' Opp. at 9.) Defendants take the opposite position, suggesting that "this case did *not* involve a 'hybrid approach'; it was a straightforward joint and several liability restitution order." (Hakan's Mem. Supp. Mot. for Credit at 6 (emphasis in Mem.); *see also* Ayfer's Mem. Supp. Mot for Credit at 3 ("Nor does this case have anything to do with the 'hybrid approach' to imposing restitution, or with the joint and several liability of the defendants . . . .").) Rather, according to Defendants, "[t]he matter is simple: Ayfer was ordered to make restitution . . . and the amount of credit/cash distributed exceeds the amount of her order. That is all there is to it." (Ayfer's Mem. Supp. Mot. for Credit at 3.) But aside from making conclusory statements that "this case did not involve a 'hybrid restitution' approach," Defendants offer no authority, argument, or reasoning in support of their position. (*See generally* Hakan's Mem. Supp. Mot for Credit; Ayfer's Mem' Supp. Mot. for Credit; Hakan's Reply Supp. Mot for Credit.) Nor could they, as the Court agrees with the Government that the restitution in this case was plainly imposed using a hybrid joint and several liability scheme. (*See* Hakan's Judgment (imposing restitution of $4,182,000.000, only $2,250,000.00 of which is owed jointly and severally with Ayfer).)

The parties also disagree as to the appropriate assignment of "credit" among the Defendants for the distributions reflected in the Amended Order of Restitution. The crux of Defendants' argument is that those distributions are "joint credits," which should reduce the

restitution obligation of each Defendant by the amount of the "credit." Thus, in the Defendants' view, following the distribution of $524,181.02 to W.A-M., Hakan's debt to W.A-M. was reduced from $750,000 to $225,818.98, and Ayfer's debt to W.A-M. was reduced from $500,000 to $0.[2] The Government argues that Defendants' position runs contrary to the basic principles of restitution, especially where imposed using the hybrid scheme.

As the *Sheets* court made clear in its thorough discussion of the hybrid approach, Defendants' position is inconsistent with the basic functioning of a hybrid restitution scheme. Because "the victim may recover no more than the total loss, the implication" in a hybrid restitution scheme "is that each defendant's liability ends when the victim is made whole," or when the defendant has personally paid "as much as the court ordered as to that defendant." *Sheets*, 814 F.3d at 261. As *Sheets* explains, using the *Scott* example, if "the defendant who owed $8,253, for instance," paid that amount in full, such payment alone would *not* "extinguish any payments owed by the defendant required to pay $7,479." *Id.* at 261-62. Thus, under the hybrid approach, Ayfer's obligation to W.A-M. is not extinguished until W.A-M. is "made whole," or until she has paid "as much as the court ordered as to her," *i.e.*, $500,000.00. Because W.A-M. has not yet been made whole, any payments in excess of $500,000.00 which were not made by Ayfer do not extinguish her obligation to W.A-M.

Nonetheless, Defendants argue that Ayfer's obligations have been extinguished, relying heavily on their characterization of the distributions made to W.A-M. as "joint credits" and arguing that such credits produce different outcomes than "payments made by a co-defendant." (Hakan's Mem. Supp. Mot. for Credit at 5.) In other words, Defendants argue that even if a straightforward payment by Hakan of $524,181.02 toward their joint debt to W.A-M. might not have extinguished Ayfer's obligation, the "joint credit" reflected in the

---

[2] The Court recognizes that the natural extension of Defendants' position would be to conclude that Ayfer has in fact overpaid W.A-M. by at least $24,181.02. However, Defendants make no such argument, suggesting only that her obligations should be deemed satisfied.

Amended Order of Restitution nonetheless does extinguish her obligation. The crux of Defendants' argument on this point turns on their characterization of the distribution to W.A-M. as a "joint credit." (*See, e.g.,* Hakan's Mem. Supp. Mot. for Credit at 5 ("Here, on the other hand, the credits resulted from *joint* payments and *joint* credits arising from the Second Circuit mandate, which fully reinstated this Court's December 26, 2007 Order *jointly* crediting both defendants with $1,140,907.38 from funds recovered from civil litigation and two bankruptcy proceedings." (emphasis in Mem.)).)

But Defendants cite no authority in support of that characterization. (*See id.*) The Court can find no reference to a "joint" credit in the Second Circuit's decision in *Yalincak*. Nor does the Court's December 26, 2007 order or the Amended Restitution Order refer to any credit as "joint" or describe how credits for distributions made in ancillary proceedings should be allocated. Defendants argue that the "corollary to joint and several liability under the Mandatory Victim Restitution Act, 18 U.S.C. § 3664(h), is joint and several credit," (Hakan's Reply Supp. Mot. for Credit at 4), but they cite no authority which recognizes such a "corollary." Defendants argue that "the general rule in the Second Circuit is that . . . the effect of joint liability . . . is to excuse one defendant from paying any portion of the judgment if the plaintiff collects the full amount from the other." (*Id.* at 5 (citing *United States v. Nucci*, 364 F.3d 419, 423 (2d Cir. 2004).) But Defendants fail to explain why that principle—which applies when a victim has already been made whole and thus cannot receive additional restitution payments in excess of its loss—applies here, where W.A-M. has not yet been made whole.

The parties further dispute the impact of *United States v. Broadbent*, 225 F. Supp. 3d 239 (S.D.N.Y. 2019), on this question. In *Broadbent*, four defendants were each charged and sentenced separately by four different judges "[f]or reasons perhaps known only to the Untied States Attorney's Office." 225 F. Supp. 3d at 240. The four judges imposed joint and several restitution in varying amounts on each defendant. *Id.* at 241. But "two wrinkles that

are material" arose in the sentencing of those four defendants. First, Broadbent's sentence provided that his "obligation to make restitution shall cease once the aggregate of the restitution paid by him and the three other defendants reaches $120,000," the amount of restitution imposed upon him. *Id.* Second, one of the other defendants was ordered at sentencing to forfeit $301,386.00 to the United States, and the government was ordered to "credit that amount toward his restitution obligation." *Id.* Broadbent argued that forfeiture extinguished his restitution obligation under the plain language of his sentence. *Id.* at 242.

The *Broadbent* court ultimately concluded that because "the judgment in this case departs from the hybrid approach" by including express language discharging Broadbent's obligation upon payment of $120,000.00 "by him and the three other defendants," by the plain terms of that judgment, Broadbent's obligations had been satisfied. *Id.* at 244-45. But before reaching that conclusion, the *Broadbent* court thoroughly discussed the hybrid approach and its application. Like Defendants here, Mr. Broadbent had "conceive[d] of the restitution judgments like rungs on a ladder," arguing that once the aggregate of payments made by his co-defendants reached $120,000.00, "at that time he is excused from further payment regardless of how much he contributed to the $120,000 paid to that point." *Id.* at 243. But the *Broadbent* court rejected that approach because "it is not how courts have enforced restitution collection under the hybrid approach." *Id.* at 244. Rather, "[u]nder the *Sheets* approach," which "is the correct one in cases where a court orders restitution under hybrid approach," "the government may continue to collect from Broadbent until he personally has paid the $120,000 under his criminal judgment, subject of course to the limitation that" the victim may not recover more than it lost overall. *Id.* Thus, "[i]f the judgment did not contain" the unusual provision extinguishing his obligations upon payment of $120,000 by any of the four defendants, "then Broadbent would remain liable under the *Sheets* approach until he personally had paid $120,000 or until [the victim] was completely compensated." *Id.* at 245. Contrary to Defendants' argument, the *Broadbent* court did not

identify any difference in treatment between a court-ordered forfeiture which was credited toward the restitution amount—similar to the credits at issue here, which stem from bankruptcy distributions and civil litigation—and traditional restitution payments made by a co-defendant.

The Government argues that *Broadbent* clearly sets out the proper application of the hybrid approach in a situation nearly identical to this case. (*See* Gov't Opp. at 9.) Defendants attempt to draw several distinctions between *Broadbent* and this matter. The Yalincaks reiterate their unsuccessful argument that the restitution order against them does not use the hybrid approach, in contrast to the judgment in *Broadbent*. Defendants also argue that there is a meaningful difference between the "joint credits" here and the "reduction by forfeiture" in *Broadbent* or typical payments by a co-defendant. Defendants argue that the Government's position—that there is no meaningful difference between forfeiture, the "credit" here, and regular payments—"lacks merit and is not supported by the statutory framework governing credits or the historical common law approach to credits in the joint and several liability context." (Hakan's Reply Supp. Mot. for Credit at 7.) But Defendants offer no authority to support their position and offer no explanation of their view of the "statutory framework governing credits" or the "historical common law approach to credits." Defendants claim that 18 U.S.C. § 3664(j)(2) "provides for credit to both defendants in equal shares without distinction for 'any amount paid . . . any amount later recovered.'" (*Id.*) But contrary to that suggestion, § 3664(j)(2) simply provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim." The statute indicates nothing about "joint" "credit to both defendants" or credit "in equal shares."

The Court agrees with the analysis of the hybrid approach set forth in *Sheets* and *Broadbent*, which each squarely reject the argument advanced by Defendants here: that a defendant's restitution obligation is extinguished once the total amount of restitution paid

exceeds the amount assigned to that defendant, even if the victim has not yet been made whole and the defendant has not yet paid the amount assigned to her. In the absence of any legal authority or well-reasoned argument to support their suggestion that the funds distributed to W.A-M. through bankruptcy and civil proceedings are a "joint credit" which should be counted differently than a forfeiture credited to restitution or a straightforward restitution payment, Defendants' attempts to differentiate this case from the weight of authority on functioning of hybrid restitution is unavailing. *See, e.g., United States v. Osborne*, 2010 WL 4788169, at *2 (W.D.K.Y. Nov. 17, 2010) (rejecting argument that Osborne's restitution obligation was extinguished by payments by his co-defendants because the victim "has not been fully repaid for its damages, and because Osborne's payments have failed to eclipse the ceiling for his own restitution amount"). Thus, Ayfer's restitution obligation to W.A-M. is not satisfied until W.A-M. is "made whole," or until she has paid "as much as the court ordered as to her." *See Sheets*, 814 F.3d at 261-62. Because the remaining total balance owed to W.A-M. is only $139,057.43, Ayfer cannot personally pay "as much as the court ordered as to her," *i.e.*, $500,000.00, and thus her restitution obligation to W.A-M. will cease upon payment by Hakan and/or Ayfer to W.A-M. of the remaining balance owed such that W.A-M. has been made whole.[3]

---

[3] Separately, Defendants argue rather perplexingly that the original judgment against Hakan only imposes restitution to W.A-M. in the amount of $500,000 for both Hakan and Ayfer, and thus both Defendants have actually fulfilled their obligations to W.A-M. (Ayfer's Suppl. Mem. [Doc. # 240]; Hakan's Suppl. Mem. [Doc. # 241] at 2 (citing Hakan's Judgment, Ayfer's Judgment).) But the plain language of the Judgment against Hakan indicates that the $500,000 owed to W.A-M. is *the amount which is owed jointly and severally with Ayfer*, not the total amount owed by Hakan to W.A-M. (*See* Hakan's Judgment at 1.) Moreover, Hakan was ordered to pay $4,182,000.00 total in restitution. (*Id.*) In light of the amounts owed by Hakan to each of his other victims, that total amount owed makes sense only if Hakan owes $750,000.00 to W.A-M., not $500,000.00 as he now argues.

**III.     Conclusion**

For the foregoing reasons, Defendants' Motions for Credit [Docs. ## 210, 218] are DENIED. Defendant Ayfer Yalincak's Motion to Adopt [Doc. # 211] is DENIED as moot in light of her later-filed Motion for Credit, which seeks the same relief as Hakan's Motion for Credit which she sought to adopt.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of April 2020.